[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 45 year old plaintiff husband has brought this action against the 40 year old defendant wife seeking a dissolution of their marriage that took place at Bantam, Connecticut on September 14, 1973 and also other relief. The defendant has filed a cross complaint seeking a dissolution and other relief.
The court finds that the allegations of the complaint have been proven in that the plaintiff has been a resident of Connecticut for over one year prior to January 2, 1990 when the writ and complaint were signed; there are only two children born to the defendant since the marriage: Kristi, born September 7, 1974 and Ashlie, born June 10, 1976, both issue of the marriage; and that the marriage has broken down irretrievably. Therefore, a decree is entered on the complaint dissolving the marriage of the parties on the ground alleged. The cross complaint is dismissed as moot.
In arriving at appropriate orders to be entered, in light of the statutory criteria, it is necessary to consider the history of the parties' marriage. Shortly after the marriage, the plaintiff, with the defendant's financial help, became 25% owner in an enterprise known as Kodiak Enterprises, a dealer in motorcycle parts and ski-mobiles. The parties moved to Virginia for about 15 months in connection with the business. The other owners of Kodiak asked the plaintiff to return to Connecticut to manage a local golf club owned by the other Kodiak partners. It is noted that plaintiff's father was a well known golf pro and plaintiff grew up working at local courses. He returned to work for Kodiak until one year after that business was sold. He then worked for Commercial Sewing Co. as national sales manager for several years. It was during this time that plaintiff designed several golf related items that were made by his employer. In June, 1984, the plaintiff began his own business known as Club Classic, a supplier of items to the golf industry, such as trophies, accessories, travel covers for golf bags, luggage and like items, all pictured in a catalogue, Plaintiff's Exhibit A. The plaintiff is the general partner along with several limited partner investors including several members of his family. His initial draw was $25,000 annually with a 10% annual escalator; any additional increase required partners' approval. The plaintiff drew $27,000 in 1986, $28,200 in 1987, $31,800 in 1988, $31,900 in 1989 and $29,900 in 1990, as guaranteed payments on the partnership returns, Defendant's Exhibits #3, 4, 5, 6, and 7. The family has belonged to a country club throughout the marriage, first at Torrington Country Club and for the last three years at Litchfield Country Club. The plaintiff's father and plaintiff's two brothers have paid plaintiff's dues for the last three years and prior years were paid by plaintiff's employers. CT Page 4708
The plaintiff's occupation and his avocation have centered on the game of golf. These activities have caused friction in the marriage for defendant could not accept the defendant's occupation as work since it is recreation for others. In addition, the parties had experienced friction in raising the children.
Ten years ago the parties first sought counselling, and again in the summer of 1989.
The plaintiff vacated the marital home in December, 1989.
The defendant was employed a the time of the marriage. After the two children were born, the defendant returned to work in 1978 or 1979, when the plaintiff started to work for Commercial Sewing, doing piece work sewing for plaintiff's items. The defendant is presently working part time at a local hospital with net disposable income of $95.
The plaintiff's earning capacity is tied to his business.
The chief asset of the parties is a house that is over 260 years old. The parties intended to restore it over a period of time room by room. The court finds that both parties worked on the project, but the restoration was never completed. The parties agree its fair market value is now $135,000 subject to three mortgages totaling about $77,000.
Although each party complained about the conduct of the other party, the court declines to assess fault for the breakdown on an unequal basis. An ongoing inability to communicate between plaintiff and defendant during the marriage eventually eroded the relationship beyond repair.
The plaintiff is a college graduate. The defendant is a high school graduate. The defendant is in good health. The plaintiff has several health problems, none of which affect his ability to work.
The court enters the following orders as part of the judgment.
1. The plaintiff shall have custody of the minor child Kristi and the defendant shall have rights of reasonable visitation.
2. The defendant shall have custody of the minor child Ashlie and the plaintiff shall have rights of reasonable visitation. CT Page 4709
3. The plaintiff shall pay to the defendant the sum of $86 weekly for child support, after considering actual net income of the parties' financial affidavits of May 1, 1991, the Connecticut Child Support Guidelines, and other relevant criteria
4. The plaintiff shall maintain medical insurance for the benefit of the minor children. The parties shall split equally all unreimbursed and uninsured medical expenses incurred for the health of the children.
5. The plaintiff's interest in 548 Bantam Road, Litchfield, Connecticut is awarded to the defendant, subject to the present encumbrances. Assumption by defendant of plaintiff's obligation on the mortgage notes is not ordered.
6. The plaintiff's life insurance policy in the face amount of $100,000 written by Minn Mutual shall be kept in force by plaintiff naming the two minor children as equal beneficiaries until the younger child attains 18 years of age. Proof of premium payments shall be furnished the defendant.
7. The plaintiff shall continue the defendant on the plaintiff's medical insurance for the time allowed by COBRA, at his expense.
8. The plaintiff shall continue to own his interest in the business known as Club Classic as his sole property.
9. The plaintiff shall pay and be responsible for any past due IRS taxes, interest or penalties thereon as a result of joint tax returns filed in past years and the plaintiff shall hold the defendant harmless and indemnified.
10. The plaintiff is awarded the sole ownership and possession of the 1985 Bronco motor vehicle and he shall assume and pay any loan balance due thereon. The defendant is awarded the sole ownership and possession of the 1983 Chevrolet motor vehicle.
11. Each party shall be responsible for the liabilities listed on their respective affidavits except that plaintiff shall pay 50% of Dr. Traub's bill as previously ordered.
12. The plaintiff shall continue to be liable to defendant for the unpaid balance of the pendente lite order which shall be paid in full on or before November 30, 1991.
13. The plaintiff shall pay the sum of $1.00 per year to the defendant as periodic alimony until the defendant's remarriage, either party's death, or until June 1, 1999 which date shall be CT Page 4710 non-modifiable.
14. The plaintiff is awarded the following items of tangible personal property:
a) All his golf equipment, and other miscellaneous sports equipment he used before he moved out of the family home;
b) trophies
c) Christmas tree stand if it can be found;
d) family pictures, or duplicates to be made at plaintiff's expense;
e) window fan;
f) antique golf clubs and bag which appear on cover of plaintiff's Exhibit A;
g) work boots;
h) large glass mug in kitchen;
i) movie projector and screen;
j) camping basket;
k) Kristi's dolls;
l) trailer
The defendant is awarded the remaining contents of the family home.
The Attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.